UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE K. PRAGOVICH,

        Petitioner,

                         CASE NO. 2:08-MC-50427
                         JUDGE GEORGE CARAM STEEH
                         MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

INTERNAL REVENUE SERVICE,

        Respondent.

_____/

**REPORT AND RECOMMENDATION REGARDING PETITION TO QUASH THIRD
PARTY SUMMONSES (Doc. Ent. 1) and RESPONDENT'S MOTION TO DISMISS
PETITION TO QUASH THIRD PARTY SUMMONS (Doc. Ent. 5)**

*Table of Contents*

I.     **RECOMMENDATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **REPORT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    A.     **Pragovich's May 7, 2008 Petition to Quash Third Party Summonses** . . . . . . **2**
    B.     **The IRS's June 26, 2008 Motion to Dismiss Construed as a Response to the
             Petition** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
    C.     **The Court Should Deny the Petition to Quash Third Party Summonses.** . . . **6**
          1.     **The summons served upon Gross was issued pursuant to 26 U.S.C. §
                 7602.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
          2.     **The IRS's June 26, 2008 filing (response) and Conroy's June 26, 2008
                 declaration set forth a prima facie case under** *Powell.* . . . . . . . . . . . . . **9**
          3.     **Petitioner's May 7, 2008 petition and affidavit do not meet the burden
                 that has shifted to him.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
          4.     **The Court need not decide whether petitioner is collaterally estopped
                 from bringing the First Amendment claim set forth in his petition.**
                 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

III.   **NOTICE TO PARTIES REGARDING OBJECTIONS** . . . . . . . . . . . . . . . . . . . . . . . **27**

I.     **RECOMMENDATION:** The Court should deny Pragovich's petition to quash third

party summonses (Doc. Ent. 1) and deem moot the IRS's motion to dismiss the petition to quash

third party summons (Doc. Ent. 5).

II.    **REPORT:**

A.     **Pragovich's May 7, 2008 Petition to Quash Third Party Summonses**

On January 28, 2008, IRS Agent J. Conroy wrote to George Pragovich regarding his

"participation in tax avoidance transactions."  Doc. Ent. 1 at 13 (Letter 1844).  An interview was

scheduled for February 20, 2008.  Pragovich was to bring certain documents with him.  Doc. Ent.

1 at 9-12 [Form 4564 - Information Document Request], 13, 34.  The Form 4564 contains three

(3) definitions of "promotion."  Doc. Ent. 1 at 9 ¶¶ C-E.

On February 14, 2008, Conroy again wrote to Pragovich regrading his "participation in

tax avoidance transactions."  Doc. Ent. 1 at 14 (Letter 1844).  An interview was scheduled for

March 19, 2008.  Doc. Ent. 1 at 14-15.  According to Pragovich, a Form 4564 was also attached

to this letter.  Doc. Ent. 1 at 4-5 ¶ D.

On February 29, 2008, the IRS issued a summons (Form 2039) for Pragovich to appear

on March 19, 2008 before Revenue Agent Joseph Conroy or his designee.  Revenue Agent Gary

Ferguson issued the summons, and Group Manager Sam Anderson approved the summons.  Doc.

Ent. 1 at 16-19.  Attachment A to this summons contains two (2) definitions of the term,

"Promotion[.]" Doc. Ent. 1 at 17 ¶¶ D-E.

Pragovich wrote to Conroy on or about March 11, 2008, declining Conroy's offer.  Doc.

Ent. 1 at 20-23.  According to Pragovich, on or about April 1, 2008 and April 15, 2008, the IRS

issued summonses "In the Matter of the liability of George K. Pragovich for penalties under IRC

Sec. 6700[.]"  Doc. Ent. 1 at 2-3.

On April 15, 2008, the IRS served a summons upon Rhonda Gross of Brighton, Michigan requiring her to respond by mail on May 12, 2008.  Doc. Ent. 6-2 at 1.[1]  The summons requested information related to George Pragovich and/or the National Justice Center.  Doc. Ent. 6-2 at 3-4.  Attachment A to this summons does not contain a definition of "promotion."  Doc. Ent. 6-2 at 3-4.  The "Service of Summons, Notice and Recordkeeper Certificates" was sent to Pragovich the same day.  Doc. Ent. 6-2 at 2.  He received the notice on or about April 21, 2008.  Doc. Ent. 2 at 2 ¶ B.

Pragovich claims that Attachment A to the April 2008 third-party summonses (*see*, *i.e.*, Doc. Ent. 6-2 at 3-4) contains language substantially similar to language contained in Attachment A to the February 29, 2008 summons (Doc. Ent. 1 at 17-19) sent to him.  Doc. Ent. 2 at 2 ¶ D.  Pragovich also claims that language in Attachment A to the February 29, 2008 summons sent to him is nearly the same as language in the January 28, 2008 and February 14, 2008 Information Document Requests (Doc. Ent. 1 at 9-12 [Form 4564]) sent to him.  Doc. Ent. 2 at 3 ¶ F.  Specifically, Pragovich refers to the inclusion or exclusion of a definition of "promotion."  Doc. Ent. 2 at 3 ¶¶ E, F.  Petitioner claims that, other than the omission of a "promotion" definition, the April 2008 third-party summonses are substantially identical to and seek substantially related information as the February 29, 2008 first-party summons issued to him, and the third-party summonses "facially appear[] to be following the path laid out by" Conroy's Forms 4564 and first-party summons.  Doc. Ent. 1 at 6 ¶ VI; Doc. Ent. 1 at 29 ¶ B.

---

[1]According to IRS Agent Joseph Conroy, "Gross was a plaintiff in one of the frivolous lawsuits."  Doc. Ent. 6 at 2 ¶ 5.  Allegedly, Gross filed her lawsuit in the District of Columbia on September 13, 2005.  Doc. Ent. 5 at 5 n.2; *see also Gross v. United States*, No. 05-cv-1818, 2006 WL 2787838 (D.D.C. Sept. 26, 2006).

Pragovich ("Petitioner") filed the instant petition to quash third party summonses on May 7, 2008 with respect to a summons issued to Gross.  Doc. Ent. 1.  Pragovich filed the petition, pursuant to 26 U.S.C. §§ 7609(b)(2), 7603, "to quash the third party 'summonses' issued by [Conroy], with the apparent approval of [Anderson], on grounds that the third party 'summonses' identified herein were issued for the improper purpose of chilling Petitioner's inseparable First Amendment rights of freedom in speech and press, peaceably to assemble and to petition for redress of grievances."  Doc. Ent. 1 at 1 ¶ I.

Petitioner argues that Conroy and Anderson's third-party summonses do not meet the requirements set forth in *United States v. Powell*, 379 U.S. 48 (1964).  Doc. Ent. 1 at 3 ¶ V.  He also argues that Conroy and Anderson issued the third-party summonses for an improper purpose.  Doc. Ent. 1 at 3-6 ¶¶ B-F.  Finally, he argues that Conroy and Anderson's third-party summonses "demonstrate [their] awareness of improper purpose[.]" Doc. Ent. 1 at 6-8 ¶¶ VI-XI.  Petitioner "respectfully demand[s] that the third party summonses issued to the above named persons by [Conroy], and apparently approved by [Anderson] be quashed, and that above named persons be enjoined from complying with the summonses."  Doc. Ent. 1 at 8.  Pragovich requests an order quashing summonses and providing injunctive relief.  Doc. Ent. 1 at 30.[2]

**B.    The IRS's June 26, 2008 Motion to Dismiss Construed as a Response to the Petition**

Judge Steeh has referred this case to me to conduct all pretrial proceedings.  Doc. Ent. 3. Defendant IRS is represented by Daniel A. Applegate of the U.S. Department of Justice, Tax Division.  Doc. Ent. 4.

---

[2]Allegedly, the IRS received a copy of this petition to quash on May 8, 2008; however, "[t]he copy did not state the case number or court filing."  Doc. Ent. 6 at 3 ¶ 9.

4

On June 26, 2008, respondent IRS filed a motion to dismiss petition to quash third party summons "on the grounds that the petition fails to state a claim for which relief may be granted." Doc. Ent. 5 at 1.[3]  The IRS argues that "[b]ecause the United States meets the requirements for enforcement of the summons and because Pragovich presents only meritless arguments against enforcement, the United States of America moves to dismiss the petition on the ground that it fails to state a claim on which relief may be granted."  Doc. Ent. 5 at 3.

On June 30, 2008, I entered an order setting the response deadline for respondent's motion to dismiss for August 30, 2008.  Doc. Ent. 7.  No such response has been filed.  On August 14, 2008, the United States filed a supplemental memorandum in support of motion to dismiss petition to quash third party summons.  Doc. Ent. 8.

Respondent's motion is based upon Fed. R. Civ. P. 12(b).  Federal Rule of Civil Procedure 12 sets forth rules regarding defenses and objections.  As to how defenses should be presented, the rule states in pertinent part:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:  . . . (6) failure to state a claim upon which relief can be granted[.]

Federal Rules of Civil Procedure 12(b)(6).  However, Rule 12(b) also provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

---

[3]On the same day, attorney Applegate filed a notice of appearance on behalf of the IRS. Doc. Ent. 4.

5

The IRS's June 26, 2008 motion to dismiss relies upon the concurrently filed June 26, 2008 declaration of IRS Revenue Agent Joseph Conroy, attached to which is documentation regarding the summons served upon Rhonda Gross.  Doc. Ent. 5; Doc. Ent. 6; Doc. Ent. 6-2.  "Because the respondents' motion attaches materials outside the pleadings, which is not permitted in connection with a Rule 12(b)(6) motion, and is more in the nature of a response to Pragovich's motion to quash, the Court will consider it as a response instead of as a Rule 12(b)(6) motion." *Pragovich v. Internal Revenue Service*, No. 08-MC-12, 2008 WL 3385458, *1 (S.D. Ill. Aug. 11, 2008).  Therefore, the Court should deem moot "[t]he respondents' motion to dismiss . . . as it has been construed as a response to Pragovich's motion."  *Pragovich*, 2008 WL 3385458, *2.

## C.     The Court Should Deny the Petition to Quash Third Party Summonses.

As an initial matter, this report assumes that petitioner has complied with 26 U.S.C. § 7609.  Section 7609(b)(2)(B) provides:

> **(B) Requirement of notice to person summoned and to Secretary.**--If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).

26 U.S.C. § 7609(b)(2)(B).

In *Pragovich v. Internal Revenue Service*, No. 08-00791, 2008 WL 4197762, *1 n.3 (D. Colo. Sept. 10, 2008), which concerned the summonses served upon the McReynolds and Spahr, the Court stated, "Section 7609(b)(2)(B)'s requirements, including the requirement that the petitioner timely serve the summoned party, are jurisdictional.  And Pragovich bears the burden of establishing this court's jurisdiction.  Because he has failed to meet that burden, the court

6

dismisses Pragovich's petition to quash the IRS summonses issued to Boone and Viola McReynolds and Marshall Spahr for lack of subject matter jurisdiction."  *Pragovich*, 2008 WL 4197762 at *1 n.3 (internal citations and footnotes omitted).

Petitioner's Certificate of Service represents that a copy of the memorandum (presumably the memorandum of law in support of his petition (Doc. Ent. 1 at 25-30)) was sent to Ms. Gross. Doc. Ent. 1 at 30, 32.  This report assumes that a copy of the petition (Doc. Ent. 1 at 1-8) was served as well.

**1.     The summons served upon Gross was issued pursuant to 26 U.S.C. § 7602.**

In his June 26, 2008 declaration, Conroy states that he has authority to issue administrative summonses pursuant to 26 U.S.C. § 7602 ("Examination of books and witnesses") and IRS Delegation Order No. 4,[4] as revised.  Doc. Ent. 6 at 1 ¶ 1.  According to Conroy, he is "conducting an investigation to determine whether George K. Pragovich, doing business as National Justice Center, is liable for penalties under 26 U.S.C. §§ 6700 ["Promoting abusive tax shelters, etc."] and/or 6701 ["Penalties for aiding and abetting understatement of tax liability"] in connection with Pragovich's organization, promotion and sale of services and materials which assist customers in the filing of frivolous lawsuits pursuant to 26 U.S.C. §§ 7433 ["Civil damages for certain unauthorized collection actions"] and 7431 ["Civil damages for unauthorized inspection or disclosure of returns and return information"] and/or any substantial similar program or arrangement."  Doc. Ent. 6 at 1-2 ¶ 3.

Conroy represents that "[t]he IRS has uncovered evidence from customers other than the

_____

[4]Delegation of Authority, D.O. No. 4REV22, 1997 WL 33479254 (IRS DLO Aug. 18, 1997).

7

summons recipient here that Pragovich provides direction and assistance to customers in the filing of these frivolous lawsuits as shown by one customer's invoice and statement. The invoice and statement indicates that the cost of Pragovich's services is $5,000 per lawsuit and $250/hr for other miscellaneous legal work. Pragovich has also been identified by other customers who filed a frivolous lawsuit as the promotor who assisted her in filing the suit." Also, Conroy states that "Pragovich is not an attorney." Doc. Ent. 6 at 2 ¶ 3.

According to Conroy, "[i]ndividuals have filed at least 193 lawsuits pursuant to 26 U.S.C. § 7433 in the District Court for the District of Columbia which lack legal basis and are used primarily to make anti-tax arguments. The lawsuits are filed by plaintiffs from all over the United States, yet they appear to have the same origin as they are identical in format and use practically identical legal arguments." Conroy also represents that "[t]here ha[ve] also been a number of lawsuits filed pursuant to 26 U.S.C. § 7431 which appear to come from the same source as the 26 U.S.C. § 7433 lawsuits." Doc. Ent. 6 at 2 ¶ 4.

Conroy states that "[i]n furtherance of the above investigation and in accordance with 26 U.S.C. § 7602, on April 15, 2008, [he] issued an [IRS] summons to Rhonda Gross, 12098 Silver Lake Road, Brighton, Michigan, 48116, requiring her to produce for examination books, papers, records or other data as described in the summons." Doc. Ent. 6 at 2 ¶ 5. Conroy served a copy of the IRS summons on Gross the same day via certified mail. Doc. Ent. 6 at 3 ¶ 6; Doc. Ent. 6-2 at 5. Conroy further declares that "[i]n accordance with 26 U.S.C. § 7609 ["Special procedures for third-party summonses"], on April 15, 2008, [he] served notice of the summons . . . on George K. Pragovich by certified mail, as evidenced by the certificate of service[.]" Doc. Ent. 6

8

at 3 ¶ 7; Doc. Ent. 6-2 at 2.[5]

**2.     The IRS's June 26, 2008 filing (response) and Conroy's June 26, 2008 declaration set forth a prima facie case under *Powell*.**

The Court should agree that "[t]he government has established a *prima facie* case for enforcement of the summons."  Doc. Ent. 5 at 6-7.  "Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602, provides that the IRS, through the use of an administrative summons, may examine any books, papers, records, or persons in determining the tax liability of any person or ascertaining the correctness of any return."  *United States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (internal footnote omitted).  "The IRS, however, has no power of its own to enforce the summons but must apply to the district court in order to compel production of the requested materials. 26 U.S.C. § 7604."  *Will*, 671 F.2d at 966.

"A prima facie case for enforcement is established by demonstrating that: (1) the investigation has a legitimate purpose; (2) the summoned materials are relevant to that investigation; (3) the information sought is not already within the IRS's possession; and (4) the IRS has followed the procedural steps outlined in 26 U.S.C. § 7603."  *Will*, 671 F.2d at 966 (citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964)).  "The requisite showing is generally made by the submission of the affidavit of the agent who issued the summons and who is seeking enforcement."  *Id.* (citing *United States v. Garden State National Bank*, 607 F.2d 61, 68 (3d Cir.

_____

[5]Petitioner asserts that, with respect to the five (5) April 15, 2008 summonses, "it appears that [Conroy and Anderson] have falsified records of the United States Postal Service, by sending the five (5) added summonses dated 'April 15, 2008' in an envelope 'certified' as mailed on April 14, 2008[.]" Doc. Ent. 1 at 8 ¶ XI.  *See also* Doc. Ent. 1 at 3 ¶ E.  In his affidavit, petitioner claims that "[e]ach of the five (5) additional 'April 15' summonses were delivered in one envelope bearing [a] Certified Mail # . . . and . . . postmarked April 14, 2008."  Doc. Ent. 2 at 2 ¶ C.

1979). "Once this showing is made, the burden shifts to the taxpayer to demonstrate that enforcement of the summons would be an abuse of the court's process." *Id.*

Relying upon ¶¶ 3, 4 and 11 of Conroy's declaration, the IRS contends that "[b]ecause the summoned testimony and documents are relevant to the purpose of determining if Pragovich is liable for the penalties, the first two prongs of the *Powell* test have been satisfied." Doc. Ent. 5 at 7. With respect to the first *Powell* factor, Conroy asserts that the summons served upon Gross "was issued in good faith for the purpose of securing information to aid in the investigation of George K. Pragovich for liability for penalties under 26 U.S.C. §§ 6700 and/or 6701." Doc. Ent. 6 at 3 ¶ 8. With respect to the second factor, Conroy asserts:

> The summoned documents are relevant to my investigation in determining to what extent George K. Pragovich is involved in the organization, promotion and sale of services and materials which assist customers in the filing of frivolous lawsuits pursuant to 26 U.S.C. §§ 7433 and 7431 in order to avoid collection of federal income taxes and impede the proper administration of the federal tax law.

Doc. Ent. 6 at 3 ¶ 11.

Relying upon ¶¶ 1, 10, 11 and 13 of Conroy's declaration, the IRS asserts that "[e]ach prong of the *Powell* test has been satisfied and the United States has made its *prima facie* case for enforcement." Doc. Ent. 5 at 7. With respect to the third factor, Conroy represents that "[t]he books, records, papers, and other data sought by the summons are not already in the possession of the [IRS]." Doc. Ent. 6 at 3 ¶ 10.[6] With respect to the fourth factor, Conroy states,

---

[6]Conroy claims that "[n]o Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect with respect to George K. Pragovich." Doc. Ent. 6 at 3 ¶ 12. "A Justice Department referral is in effect with respect to any person if--(I) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, or (ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person." 26 U.S.C. §

"[t]he summons was sent to the third party via certified mail.  Absent a waiver, the summons should have been served personally in accordance with 26 U.S.C. § 7603(a).[7]  Otherwise, all administrative steps required by the [IRC] for issuance of the summons have been taken."  Doc. Ent. 6 at 4 ¶ 13.[8]

### 3.    Petitioner's May 7, 2008 petition and affidavit do not meet the burden that has

_____

7602(d)(2)(A).

[7]"A summons issued under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty."  26 U.S.C. § 7603(a).

[8]The IRS contends that "[a]lthough [it] served the summons on the recipient by certified mail rather than by hand (as required by 26 U.S.C. § 7603(a)[)], courts excuse violations of this sort where the IRS acts in good faith and there is no prejudice to the taxpayer."  Doc. Ent. 5 at 7-8 n.3.  In support of this statement, the IRS cites (1) *United States v. Texas Heart Institute*, 755 F.2d 469, 478 (5th Cir. 1985) ("where the taxpayer has received every benefit of the administrative steps required by the Code, a failure by the IRS to meet the technical niceties of the statute will not bar enforcement of the summons."), *overruled by United States v. Barrett*, 837 F.2d 1341, 1351 (5th Cir. 1988) ("we OVERRULE the holding in *Texas Heart* that a district court should determine whether section 6103 was violated, and, if so, to condition enforcement on compliance with that section.") and (2) *Boyd v. United States*, 87 Fed.Appx. 481, 485 (6th Cir. 2003) ("because the plaintiffs have not demonstrated any actual or even possible prejudice from these two violations, we reject the plaintiffs' invitation to use this case to teach the IRS a lesson.").  *But see United States v. Jose*, 519 U.S. 54, 57 n. (1996) (recognizing intercircuit conflict).

It is the IRS's position that "Pragovich has not raised objections to how the summons was served and clearly received notice of the summons as shown by his filing of this court action."  Doc. Ent. 5 at 8 n.3.  Moreover, the IRS asserts, "Pragovich does not have standing to object to the manner of service on the summons recipient because objections to defects in service may only be raised by the summoned party."  Doc. Ent. 5 at 8 n.3 (citing *Wright v. United States*, 964 F.Supp. 336 (M.D. Fla. 1997)).  In *Wright*, the Court stated that "the right to challenge the method of service should be limited in these situations to third-party recordkeepers.  Wright's objection to service by mail should, therefore, be rejected for lack of standing."  *Wright*, 964 F.Supp. at 338 (citing *King v. United States*, 684 F.Supp. 1038, 1041 (D. Neb.1987)).

**shifted to him.**

**a.**     Although Petitioner was invited to do so by August 30, 2008, *see* Doc. Ent. 7, he has not

filed a response to respondent's June 26, 2008 motion, which, as previously noted, this report

construes as a response to the petition.  The only documents Petitioner has filed are his May 7,

2008 petition (Doc. Ent. 1) and affidavit (Doc. Ent. 2).  However, in the petition itself, petitioner

claims that "[e]ach of the third party summonses issued to the above named persons by

[Conroy/Anderson] fails to meet any of the *Powell* requirements."  Doc. Ent. 1 at 3 ¶ V.

As to the **first prong**, petitioner argues that the summonses were issued for an improper

purpose.  Doc. Ent. 1 at 3.  He notes that the third-party summonses were issued "[i]n the matter

of the liability of George K. Pragovich for penalties under IRC Sec. 6700[,]" and claims this is

"the sole citation to authority therein."  Doc. Ent. 6-2 at 1; Doc. Ent. 1 at 3 ¶ B.  Petitioner

appears to argue that use of the phrase "penalties under IRC Sec. 6700" as the basis for the third

party summonses is an abuse by Conroy/Anderson, when 26 U.S.C. § 6700 (which as previously

noted governs "Promoting abusive tax shelters, etc.") "applies <u>only</u> to 'promoters' of 'abusive

tax shelters, etc.'[.]"  Doc. Ent. 1 at 4 ¶ C.[9]  Petitioner claims that the Forms 4564 issued to him

on January 28, 2008 and February 14, 2008 (Doc. Ent. 1 at 9-12) and the February 29, 2008

summons issued to him (Doc. Ent. 1 at 16-19) show that the phrase "penalties under IRC Sec.

6700" "ha[s] no material relation to IRC § 6700, or to 'Promoting abusive tax shelters, etc.'[.]"

Doc. Ent. 1 at 4-5 ¶ D.  For example, petitioner claims, the definitions of "promotion" found in

Attachment A to the February 29, 2008 summons to petitioner (Doc. Ent. 1 at 17 ¶ D) and the

January 28, 2008 and February 14, 2008 Forms 4564 (Doc. Ent. 1 at 9 ¶¶ C, D) "show[] that the

_____

[9]In support of this statement, petitioner cites to 26 U.S.C. § 6700(a).  Doc. Ent. 1 at 4 ¶ C.

12

particular interest of [Conroy/Anderson] is to chill Petitioner's (and others') exercise of First Amendment rights." Doc. Ent. 1 at 5 ¶ E. Petitioner claims that these three documents "are competent evidence that [Conroy's/Anderson's] third party summonses . . . are intended for the improper purpose of chilling Petitioner's inseparable First Amendment rights of freedom in speech and press, peaceably to assemble and to petition for redress of grievances by filing lawsuits as authorized by Congress in the Taxpayer Bill of Rights (enacting [26 U.S.C.] § 7433)." Doc. Ent. 1 at 5-6 ¶ F.

In support of his claim that the third-party summonses "demonstrate [Conroy's/Anderson's] awareness of improper purpose[,]" petitioner states that the third-party summonses specifically omit the definition of "promotion" which appears in Attachment A to the February 29, 2008 summons (Doc. Ent. 1at 17 ¶ D). Doc. Ent. 1 at 6 ¶ VI; Doc. Ent. 1 at 29 ¶ B. With respect to the first prong of the *Powell* test, Petitioner claims that seeking relief under 26 U.S.C. §§ 7433 and/or 7431 "OR associating with other Citizens in respect thereof, [is] an exercise of First Amendment rights neither contemplated in, nor assailable through IRC § 6700." Doc. Ent. 1 at 6 ¶ VII(A). Petitioner argues that the third-party summonses do not meet the **"legitimate purpose" prong** of the *Powell* test and should be quashed. Doc. Ent. 1 at 6 ¶ VII(B).

Likewise, with respect to the **second prong**, he claims that "information relating thereto is irrelevant to any investigation of 'Promoting abusive tax shelters, etc.' under IRC § 6700." Doc. Ent. 1 at 6-7 ¶ VIII(A). Therefore, petitioner asserts, the third party summonses do not meet the **"relevance" prong** of the *Powell* test and should be quashed. Doc. Ent. 1 at 7 ¶ VIII(B).

With respect to the **third prong**, petitioner claims that Conroy/Anderson "demonstrate an awareness (valid or not) of an association between Petitioner and the 'summoned' persons, and/or of an exercise of First Amendment rights, with respect to seeking [relief under 26 U.S.C. §§ 7433 and/or 7431] and thus demonstrate that the government already possesses the irrelevant information sought." Doc. Ent. 1 at 7 ¶ IX(A). Therefore, petitioner asserts, the third party summonses do not meet the **"possession" prong** of the *Powell* test and should be quashed. Doc. Ent. 1 at 7 ¶ IX(B).

Finally, with respect to the **fourth prong**, petitioner cites 26 U.S.C. §§ 7602, 7433 and 7431 and argues that the purposes set forth in Section 7602 are not applicable "nor do any 'administrative steps' exist to investigate the exercise of First Amendment rights 'for penalties under IRC Sec. 6700'." Doc. Ent. 1 at 7-8 ¶ X.

Petitioner's brief in support of his petition also addresses the **first prong** of the *Powell* test. Doc. Ent. 1 at 25-30. Therein, petitioner claims that Conroy and/or Anderson are seeking to chill his First Amendment right to petition the government for a redress of grievances. He points out that "the right . . . to petition the government for the redress of tax grievances . . . has been with us and clearly established since the Sons of Liberty visited Griffin's Wharf in Boston." *Van Deelen v. Johnson*, 497 F.3d 1151, 1158 (10th Cir. 2007). Petitioner claims this right "is deemed inseparable from other First Amendment rights." Doc. Ent. 1 at 26 ¶ D.

After pointing out that he is being investigated for liability pursuant to 26 U.S.C. § 6700, petitioner claims that the third-party summonses (one of which was issued to Gross) do not seek information contemplated by 26 U.S.C. § 6700(a) ("Imposition of penalty."). Doc. Ent. 1 at 26-28 ¶¶ A, B. Pragovich claims that the summonses seek "only to further an improper purpose

14

because Petitioner, and the persons 'summoned', are/were/intend to be, again, Plaintiffs in actions for civil damages, as authorized by Congress in [26 U.S.C.] §§ 7433 and/or 7431, respectively, filed in the District Court of the United States in Washington, D.C.[.]"  Pragovich claims this is shown by comparing (1) the January 28, 2008 and February 14, 2008 Forms 4564 sent to him and (2) the February 29, 2008 summons sent to him with (3) the April 2008 summonses sought to be quashed.  Doc. Ent. 1 at 28.  Petitioner notes that "promotion" is defined in Attachment A to the February 29, 2008 summons sent to him (Doc. Ent. 1 at 17) and in the Form(s) 4564 (Doc. Ent. 1 at 9).  Doc. Ent. 1 at 28-29 ¶ B.  He claims that Conroy/Anderson's omission of the "promotion" definition found in petitioner's February 29, 2008 summons from the April 2008 third-party summonses was calculated and "shows that the particular interest of [Conroy/Anderson] is to chill Petitioner's (and others') exercise of First Amendment rights."  Doc. Ent. 1 at 29 ¶ C.

It is petitioner's position that Conroy has "failed to meet the 'legitimate purpose' requirement set forth in . . . *Powell* . . . acting in bad faith to chill Petitioner's inseparable First Amendment rights of freedom in speech and press, peaceably to assemble and to petition for redress of grievances."  Doc. Ent. 1 at 29 ¶ III.  In other words, petitioner is arguing that the IRS has not met the first prong of the *Powell* test.  At the conclusion of his brief, petitioner requests that the Court (1) quash the third-party summonses; (2) temporarily and preliminarily enjoin and prohibit the IRS "from obtaining or using any information, records or testimony that could be acquired from any of the third-parties which relates to Petitioner's (or their own) exercise of First Amendment rights, by directing [Conroy] to notify each summoned third-party not to comply with the summons and not to send the summoned information until the underlying

15

questions before the Court are fully determined[;]" and (3) temporarily and preliminarily enjoin and prohibit Conroy "or persons/agents acting in concert therewith from continuing the facially bogus 'Promoting abusive tax shelters, etc.' investigation regarding 'penalties under [§] 6700' in retaliation for Petitioner's exercise of First Amendment rights[.]"  Doc. Ent. 1 at 30.

    In his affidavit, petitioner claims that 26 U.S.C. §§ 7433 and 7431 "authorize aggrieved Citizens to file lawsuits against the United States for the reasons specified therein."  Doc. Ent. 2 at 3 ¶ G.  Referring to the memorandum of law in support of his petition (Doc. Ent. 1 at 25-30), Pragovich also contends that "[l]awsuits are included in the First Amendment right to petition for redress of grievances, and have been found by the Courts to be inseparable from the First Amendment rights of freedom in speech and press, and peaceably to assemble."  Doc. Ent. 2 at 3 ¶ II.

**b.**    Respondent argues that "Pragovich fails to show that issuance of the summons is an abuse of process."  Doc. Ent. 5 at 8-11.  Relying upon *Cypress Funds, Inc. v. United States*, No. 99-3840, 2000 WL 1597833, *4 (6th Cir. Oct. 20, 2000) ("'Cypress Funds' burden to establish bad faith is a heavy one-it must set forth 'specific facts and evidence to support [its] allegations.'") (quoting *Liberty Financial Services v. United States*, 778 F.2d 1390, 1392 (9th Cir.1985)), the IRS claims that Pragovich "does not allege any specific facts or evidence to support" his argument that "in issuing the summons the IRS acted in 'bad faith to chill Petitioner's inseparable First Amendment rights of freedom in speech and press, peaceably to assemble and to petition for redress of grievances.'" Doc Ent. 5 at 8 (quoting Doc. Ent. 1 at 29).

    Specifically, the IRS makes two arguments.  First, it contends that "[t]he summons does not violate the First Amendment."  Doc. Ent. 5 at 8-9.  As the IRS acknowledges, "[o]nce a party

16

seeking to quash disclosure meets their initial burden of making a prima facie showing of

arguable First Amendment infringement, the burden shifts to the government to make a showing

of need for the material." *Life Science Church v. United States*, 607 F.Supp. 1037, 1038 (N.D.

Ohio 1985) (referencing *United States v. Citizens State Bank*, 612 F.2d 1091, 1094 (8th

Cir.1980)).  The IRS asserts that "the suits are patently frivolous.  Pragovich does not have any

First Amendment right to help customers file frivolous lawsuits that are designed to impede tax-

law administration.  Nor do the customers have a First Amendment right to file such suits."  As

the government acknowledges, "there is no First Amendment right to 'baseless litigation[.]'"

*Nestle Ice Cream Co. v. N.L.R.B.*, 46 F.3d 578, 585 (6th Cir. 1995) (citing *Bill Johnson's

Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983)).  In the end, the IRS asserts, Pragovich

"has not made a *prima facie* showing of an arguable First Amendment infringement."  Doc. Ent.

5 at 9.

Second, the IRS contends that "[t]he First Amendment does not protect false commercial

speech."  Doc. Ent. 5 at 9-11.  Relying upon Paragraphs 3 and 4 of Conroy's declaration, the IRS

argues that "Pragovich's speech at issue, to the extent it is speech, is false commercial speech

that is unprotected under the First Amendment."  The IRS contends that "Pragovich has failed to

show that the IRS has violated or will violate any of his First Amendment rights by issuing the

summons in order to investigate Pragovich's role in helping customers file frivolous suits.

Accordingly, Pragovich has failed to meet his burden of showing that the summons constitutes

an abuse of process."  Doc. Ent. 5 at 11.

In conclusion, the IRS states that the summons to Gross was issued "as part of a proper

investigation of Pragovich's actions in helping customers file frivolous lawsuits to impede tax-

law administration.  The investigation will lead to a determination whether Pragovich is liable

for penalties under 26 U.S.C. §§ 6700 and/or 6701.  The summons was issued for a proper

purpose and [is] valid and enforceable.  The Court should dismiss the petition to quash the

summons."  Doc. Ent. 5 at 11-12.

**c.**      The First Amendment provides in part that "Congress shall make no law . . . abridging

the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to

petition the Government for a redress of grievances."  U.S. Const. amend. I.  As petitioner points

out at the opening of the brief in support of his petition (Doc. Ent. 1 at 25-26), "the rights to

assemble peaceably and to petition for a redress or grievances are among the most precious of

the liberties safeguarded by the Bill of Rights.  These rights, moreover, are intimately connected

both in origin and in purpose, with the other First Amendment rights of free speech and free

press."  *United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222

(1967).

         "The right to petition is cut from the same cloth as the other guarantees of that

Amendment, and is an assurance of a particular freedom of expression."  *McDonald v. Smith*,

472 U.S. 479, 482 (1985).  "The Petition Clause . . . was inspired by the same ideals of liberty

and democracy that gave us the freedoms to speak, publish, and assemble."  *McDonald*, 472 U.S.

at 485.  "Certainly the right to petition extends to all departments of the Government."

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

         "The right of access to the courts is indeed but one aspect of the right of petition."

*California Motor Transport Co.*, 404 U.S. at 510.  "The very idea of a government, republican in

form, implies a right on the part of its citizens to meet peaceably for consultation in respect to

18

public affairs and to petition for a redress of grievances." *United States v. Cruikshank*, 92 U.S. 542, 552 (1875). *See also National Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 428-429 (1963) ("the activities of the NAACP, its affiliates and legal staff shown on this record are modes of expression and association protected by the First and Fourteenth Amendments[.]").

"It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances.  All these, though not identical, are inseparable." *Thomas v. Collins*, 323 U.S. 516, 530 (1945); Doc. Ent. 1 at 26 ¶ E.  *See also Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 587 (6th Cir. 2008) ("It is logical to extend [the holding in *Gable v. Lewis*, 201 F.3d 769 (6th Cir. 2000)] from petitioning to all speech because those rights are 'inseparable.'") (citing *McDonald*, 472 U.S. at 485, and *Thomas*, 323 U.S. at 530).

Furthermore, "[t]he filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts." *Hoeber For and on Behalf of N.L.R.B. v. Local 30, United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, AFL-CIO*, 939 F.2d 118, 126 (3d Cir. 1991). *See also R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 439-440 (6th Cir. 2005) ("To the extent that Goose Island alleges that government officials retaliated against it for accessing the courts, that claim arises under the First Amendment.") (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) and *Hoeber*); *Nicholson v. City of Westlake*, 76 Fed.Appx. 626, 628 (6th Cir. 2003) (with respect to a 42 U.S.C. § 1983 claim of retaliation, plaintiff's "filing of the initial lawsuit constituted protected conduct under the First Amendment

right to 'petition the Government for redress of grievances.'").

Therefore, to a certain extent, petitioner is correct that "First Amendment rights include lawsuits[.]" Doc. Ent. 1 at 25.  However, as the IRS points out, "baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants, Inc. v. National Labor Relations Board*, 461 U.S. 731, 743 (1983); Doc. Ent. 5 at 9.  Furthermore, commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561 (1980) (citing cases).  "Untruthful speech, commercial or otherwise, has never been protected for its own sake." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976) (citing cases).

"Under *Central Hudson*, commercial speech receives a limited form of First Amendment protection so long as it concerns a lawful activity and is not misleading or fraudulent." *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 340 (1986).  Citing several cases, the IRS contends that "[w]hile an individual is free to express erroneous and frivolous arguments about the tax laws or their application, such speech that occurs in a commercial context or in connection with a commercial interest is unprotected false commercial speech." Doc. Ent. 5 at 10.  Among these cases are *United States v. Schiff*, 379 F.3d 621, 629 (9th Cir. 2004);[10] *United States v. Raymond*, 228 F.3d 804, 815, 816 (7th Cir. 2000) ("It is

_____

[10]"[T]he expressive and political portions of *The Federal Mafia* are not 'inextricably entwined' with its commercial elements.  Schiff can relate his long history with the IRS and explain his unorthodox tax theories without simultaneously urging his readers to buy his products.  Because the protected and unprotected parts of the book are not inextricably intertwined, Schiff cannot use the protected portions of *The Federal Mafia* to piggy-back his fraudulent commercial speech into full First Amendment protection." *Schiff*, 379 F.3d at 629.

permissible for the government to prevent the dissemination of false or misleading commercial speech[,]" and concluding that "the district court's entry of a permanent injunction preventing the defendants from engaging in various activities related to the sale of the 'De-Taxing America Program' and the incitement to violate federal tax laws is AFFIRMED."); *United States v. White*, 769 F.2d 511, 517 (8th Cir. 1985) ("The commercial speech in question in the present case, appellant's representations regarding the allowability of deductions, the excludability of income and the tax benefits of the PPH plan, was not only completely misleading, but it also promoted tax evasion and abusive tax avoidance.") (citing cases); and *United States v. Buttorff*, 761 F.2d 1056, 1066 (5th Cir. 1985) (citing *Central Hudson Gas & Electric Corp.*, 447 U.S. at 563-564) ("the First Amendment does not protect commercial speech which is inherently misleading or has proven subject to abuse, nor does it protect commercial speech which promotes an illegal activity or transaction."), 1068 (concluding that "the district court's injunction, expressly authorized by section 7408, [did] not violate appellant's rights under the First Amendment.").[11]

**d.**     The Court should deny the petition to quash third party summons on the basis that the conduct in which Pragovich is engaged is commercial speech of the type not protected by the First Amendment.  This conclusion was reached in several other districts.  For example, in the case concerning the summons served upon Puhn, the court stated, "[t]he court today need not find the action filed by Mr. Puhn was frivolous.  This is because the government also argues the

---

[11]In *Buttorff*, "[a]ppellant sold a kit of trust forms which included a declaration, introductory materials, and step-by-step instructions for creating and maintaining the trust. Appellant also participated in setting up the trusts and provided for preparation of his customers' income tax returns for the first year after the trust was created. Although the forms were basically the same for all customers, the purchase price of the documents and service varied, based on the value of the assets placed in the trust." *Buttorff*, 761 F.2d at 1057 n.1.

conduct on Mr. Pragovich, selling and facilitating law suits of this nature, is commercial speech unprotected by the First Amendment.  The court agrees." *Pragovich v. United States*, No. 08-5010, 2008 WL 3977578, *3 (W.D. Wash. Aug. 22, 2008).  The Court further stated, "Sale of a package 'how to sue' kit that would allow for the filing of an action with as many defects as the one filed by Mr. Puhn, would be unprotected commercial speech.  Further, Mr. Puhn's First Amendment right to petition government cannot be litigated or raised by Mr. Pragovich. Mr. Pragovich's speech would be unprotected because it appears to be false or misleading commercial speech." *Pragovich*, 2008 WL 3977578, *3.  The court concluded that "Mr. Pragovich has failed to prove the summons at issue in this action should be quashed. The motion to quash the summons issued to Scott Puhn should be DENIED." *Id*.

In the case concerning the summons(es) served upon the Rhodes, the court stated, "[a]ssuming arguendo that Pragovich intends to assert a violation of his own First Amendment rights in connection with his business, the violations would relate to 'commercial speech,' which has been defined as 'expression related solely to the economic interests of the speaker and its audience.'" *Pragovich v. Internal Revenue Service*, 2008 WL 2914514, 3 (M.D. Pa. July 24, 2008) (quoting *Cent. Hudson & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980)).  The court explained that "[a]bsent proof from Pragovich that his business-related communications were protected, the court cannot conclude that he has met his burden to prove that enforcement of the third-party summonses would infringe his First Amendment rights." *Pragovich*, 2008 WL 2914514, 3.

In the case concerning the summons served upon Gorman, U. S. Magistrate Judge Rodovich stated, "[s]uch speech, including erroneous and frivolous arguments about tax law,

that occurs in connection with a commercial interest is unprotected false commercial speech."
*Pragovich v. Internal Revenue Service*, No. 2:08-MC-33, 2008 WL 5273576, *1 (N.D. Ind. Dec.
16, 2008) (referencing *United States v. Raymond*, 228 F.3d 804, 815 (7th Cir.2000)).  The court
concluded that "Pragovich ha[d] not met the burden, and his petition to quash the summons
[wa]s DENIED."  *Pragovich*, 2008 WL 5273576, *1.

Finally, in the case concerning the summons(es) served upon the Brandts, the Court
stated that "any First Amendment right of his own that Pragovich may have raised relates to
what is clearly commercial speech[.]"  *Pragovich v. Internal Revenue Service*, 2008 WL
2692125, 2 (C.D. Ill. July 1, 2008).  Referencing *Raymond* and *Schiff*, the Court stated that "[t]he
government clearly has a high degree of interest in regulating speech designed to violate the Tax
Code.  In a line of tax-protester cases, Courts have unanimously applied this principle to hold
that commercial speech that is misleading, fraudulent or related to illegal activity is not protected
at all."  *Pragovich*, 2008 WL 2692125, 3.  The court further stated that "Pragovich's reliance on
broad and general legal statements about the right to petition offers no insight into the particular
type of commercial speech that is presented here[,]" and denied the petition to quash.  *Id.*

**4.    The Court need not decide whether petitioner is collaterally estopped from bringing
the First Amendment claim set forth in his petition.**

On August 14, 2008, the IRS filed a supplemental memorandum in which it argues that
"the Court should dismiss Pragovich's petition because on July 15, 2008 another federal court
considered and rejected the argument Pragovich presents in his petition.  Accordingly the
doctrine of issue preclusion bars Pragovich from pursing this case."  Doc. Ent. 8 at 1.  It is the
IRS's position that the sole argument in Pragovich's instant petition is that "enforcement of the
summons violates his First Amendment rights because the summons recipient is a plaintiff in

23

various lawsuits." Doc. Ent. 8 at 2. The IRS argues that "[b]ecause Pragovich raises the same argument in this case that he raised in the case in Florida, issue preclusion now prevents [him] from relitigating the issue before this Court." Doc. Ent. 8 at 3.

The doctrine of collateral estoppel "applies only when (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue." *Hammer v. Immigration and Naturalization Service*, 195 F.3d 836 (6th Cir. 1999). Referencing *United States v. First Nat. State Bank of New Jersey*, 616 F.2d 668, 675 (3d Cir. 1980) ("the parties will be collaterally estopped from challenging any fact necessary to our legal conclusion that the summonses are valid."), the IRS asserts that "[d]istrict courts have previously applied issue preclusion to IRS summons proceedings." Doc. Ent. 8 at 3.

On April 18, 2008, Pragovich filed a petition to quash third party summonses in *Pragovich v. Internal Revenue Service*, Case No. 8:08-mc-00050 (M.D. Fla.). He filed an amended petition to quash third party summonses on May 5, 2008 with respect to summonses issued to Daniel T. Smith, Steven A. Lutz, and Mary G. Smith in Florida. Doc. Ent. 8-4. The instant petition and the amended Florida petition are similar. Doc. Ent. 1 at 1-8 (Petition to Quash Third Party Summonses), 25-33 (Brief in Support); Doc. Ent. 8-4 at 1-9 (Amended Petition to Quash Third Party Summonses), 10-18 (Brief in Support).

On May 13, 2008, Magistrate Judge Jenkins entered an order to show cause why the amended petition should not be dismissed for lack of subject matter jurisdiction as to George K.

24

Pragovich.  On June 11, 2008, Magistrate Judge Jenkins entered a report that, among other things, recommended the petition be dismissed with prejudice. Pragovich filed an objection to the report and recommendation on June 27, 2008, and the IRS filed a response to the objection on July 7, 2008.

On July 14, 2008, Judge Susan C. Bucklew entered an order which in part denied petitioner's amended petition to quash third party summonses and entered judgment in favor of respondents.  Doc. Ent. 8-2 at 1-4.  The Court agreed that respondent had made a prima facie showing of the *Powell* elements, because:

> . . . (1) the investigation of Petitioner relates to whether he has assisted his customers in filing frivolous lawsuits in order to impede tax law administration; (2) the inquiry of Daniel and Mary Smith is relevant to that purpose, because they have filed one of the allegedly frivolous lawsuits; (3) the IRS does not already have the information that it seeks; and (4) the administrative steps have been followed.

However, Judge Bucklew also concluded that Pragovich had not shown an abuse of the Court's process.  In so doing, the Court rejected petitioner's argument that "the summonses were issued for the improper purpose of chilling his First Amendment rights[,]" "as the First Amendment does not protect false commercial speech."  Doc. Ent. 8-2 at 3.  Judgment was entered the following day.  Doc. Ent. 8-3.[12]

---

[12]According to petitioner, twenty-two (22) third party summonses were issued on April 1, 2008.  Doc. Ent. 1 at 2 ¶ IV(A) & n.2.  He received notice of these summonses on or about April 3, 2008.  Doc. Ent. 1 at 2 ¶ IV(B), Doc. Ent. 2 at 1-2 ¶ A.  Also, five (5) were issued on April 15, 2008.  Doc. Ent. 1 at 2 ¶ IV(C), Doc. Ent. 1 at 2-3 n.3.  He received notice of these summonses on or about April 21, 2008.  Doc. Ent. 1 at 3 ¶ D, Doc. Ent. 2 at 2 ¶ B.

In addition to the aforementioned Florida case, rulings with respect to the summons served as to some of these individuals have been issued.  *See, i.e.*, *Pragovich v. Internal Revenue Service*, No. 2:08-MC-33, 2009 WL 230638 (N.D. Ind. Jan. 30, 2009) (Gorman); *Pragovich v. Internal Revenue Service*, No. 08-6422, 2009 WL 73774 (D. Idaho Jan. 8, 2009) (DeRyan, Stockwell); *Pragovich v. Internal Revenue Service*, No. 08-0041, 2008 WL 5082267 (D. Ariz.

2:08-mc-50427-GCS-PJK   Doc # 9   Filed 11/09/09   Pg 26 of 28   Pg ID 122

In its supplemental brief, the IRS explains that "[t]he United States seeks to preclude

Pragovich's First Amendment argument which is the same argument previously litigated in the

Florida case."  Doc. Ent. 8 at 3.  Specifically, the IRS contends that:

1)      the parties in both proceedings are the same,
2)      the Florida court entered a valid, final judgment on the issue,
3)      the issue actually litigated in Florida is identical to that raised here,
4)      the resolution of that issue was necessary to the final judgment, and
5)      Pragovich had a full and fair opportunity to litigate the issue in Florida.

The government concludes that "[b]ecause all five elements for issue preclusion have been

fulfilled, Pragovich should be precluded from raising his First Amendment argument again."

Doc. Ent. 8 at 4.

Here, if the Court agrees with my foregoing conclusion that petitioner has not met his

burden, then the Court need not address whether "[i]ssue preclusion prevents Pragovich from

relitigating his First Amendment argument in support of his petition to quash the third-party

summons."  Doc. Ent. 8 at 5.[13]

---

Nov. 26, 2008) (Cooper, Koerner, Holt); *Pragovich v. Internal Revenue Service*, No. 08-00791, 2008 WL 4197762 (D. Colo. Sept. 10, 2008) (B. McReynolds, V. McReynolds, Spahr); *Pragovich v. United States*, No. 08-5010, 2008 WL 3977578 (W.D. Wash. Aug. 22, 2008) (Puhn); *Pragovich v. Internal Revenue Service*, No. 08-MC-12, 2008 WL 3385458 (S.D. Ill. Aug. 11, 2008) (Wesselman); *Pragovich v. Internal Revenue Service*, No. 08-0104, 2008 WL 2914514 (M.D. Pa. July 24, 2008) (R. Rhodes, M. Rhodes); *Pragovich v. Internal Revenue Service*, No. 08-00174, 2008 WL 2774433 (D. Hawai'i July 16, 2008) (E. Travis, B. Travis, Tiepel); *Pragovich v. Internal Revenue Service*, No. 08-mc-4017, 2008 WL 2692125 (C.D. Ill. July 1, 2008) (M. Brandt, N. Brandt).

Petitioner has also filed petitions to quash third party summonses/motions to quash in other cases.  *Pragovich v. Internal Revenue Service*, No. 4:08-mc-00003 (S.D. In.); *Pragovich v. Internal Revenue Service*, No. 1:08-mc-00006 (S.D. Ala.); *Pragovich v. Internal Revenue Service*, No. 1:08-cv-01151 (D. Md.).

[13]If the Court disagrees with my conclusion that petitioner has not met his burden, then it may consider the decision in *Pragovich v. Internal Revenue Service*, No. 08-0041, 2008 WL 5082267, *3 (D. Ariz. Nov. 26, 2008), wherein, based upon Florida and Indiana district court

26

**III.**     **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-

48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir.

1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that

raise some issues but fail to raise others with specificity, will not preserve all the objections a

party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th

Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir.

1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall not be more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


                                                  s/Paul J. Komives
                                                  PAUL J. KOMIVES
Dated 11/9/09                                     UNITED STATES MAGISTRATE JUDGE

---

decisions, the Court found that "the instant [Arizona] petition is likewise barred pursuant to the
doctrine of issue preclusion."

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on November 9, 2009.

s/Eddrey Butts
Case Manager